Scott S. Thomas, Bar No. 21-275
sst@paynefears.com
Sarah J. Odia, Bar No. 21-279
sjo@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Plaintiffs Pulte Homes of New
Mexico, Inc. and Pulte Development New
Mexico, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PULTE HOMES OF NEW MEXICO, INC., a Michigan corporation; PULTE DEVELOPMENT NEW MEXICO, INC., a Michigan corporation, <br><br>      Plaintiffs, <br><br>   v. <br><br> GUIDEONE NATIONAL INSURANCE COMPANY, an Iowa corporation; SENTINEL INSURANCE COMPANY, LTD. a Connecticut corporation; CINCINNATI INDEMNITY COMPANY, an Ohio corporation; THE CINCINNATI INSURANCE COMPANY, an Ohio corporation; PELEUS INSURANCE COMPANY, a Virginia corporation; UNITED SPECIALTY INSURANCE COMPANY, a Delaware corporation; KNIGHT SPECIALTY INSURANCE COMPANY, a Delaware corporation; NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York | CIVIL NO. <br><br> **PLAINTIFFS' COMPLAINT** <br><br> **JURY DEMAND** |

corporation; ACE AMERICAN INSURANCE
COMPANY, a Pennsylvania corporation;
EVEREST PREMIER INSURANCE
COMPANY, a Delaware corporation;
UNITED FIRE & CASUALTY COMPANY,
an Iowa corporation; SELECTIVE
INSURANCE COMPANY OF AMERICA, a
New Jersey corporation; CENTRAL
MUTUAL INSURANCE COMPANY, an
Ohio corporation; NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA, a Pennsylvania
corporation; STARR INDEMNITY &
LIABILITY COMPANY, a Texas
corporation; STARR SURPLUS LINES
INSURANCE COMPANY, a Texas
corporation; ENDURANCE AMERICAN
SPECIALTY INSURANCE COMPANY, a
Delaware corporation; CLEAR BLUE
SPECIALTY INSURANCE COMPANY, a
Texas corporation; WESTFIELD
INSURANCE COMPANY, an Ohio
corporation; AMERICAN FIRE &
CASUALTY INSURANCE COMPANY, a
New Hampshire corporation;

        Defendants.

Plaintiffs Pulte Homes of New Mexico, Inc. and Pulte Development New Mexico, Inc.,
(collectively, "Pulte" or "Plaintiffs") hereby allege as follows:

**PARTIES**

1.      At all times mentioned herein, Pulte Homes of New Mexico, Inc. was and is a
Michigan corporation, authorized to do business in the State of New Mexico, with its principal
place of business in Georgia.

2.      At all times mentioned herein, Pulte Development New Mexico, Inc. was and is a

Michigan corporation, authorized to do business in the State of New Mexico, with its principal place of business in Georgia.

3.     Plaintiffs are informed and believe, and on that basis allege, that Defendant GUIDEONE NATIONAL INSURANCE COMPANY, LTD. ("GuideOne") at all times mentioned herein was and is an Iowa corporation with its principal place of business in Iowa. Upon information and belief, Sentinel is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

4.     Plaintiffs are informed and believe, and on that basis allege, that Defendant SENTINEL INSURANCE COMPANY, LTD. ("Sentinel") at all times mentioned herein was and is a Connecticut corporation with its principal place of business in Connecticut. Upon information and belief, Sentinel is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

5.     Plaintiffs are informed and believe, and on that basis allege, that Defendant CINCINNATI INDEMNITY COMPANY ("Cincinnati Indemnity") at all times mentioned herein was and is an Ohio corporation with its principal place of business in Ohio. Upon information and belief, Cincinnati is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section

COMPLAINT

59A-5-32 NMSA 1978.

6.      Plaintiffs are informed and believe, and on that basis allege, that Defendant THE CINCINNATI INSURANCE COMPANY ("Cincinnati Insurance") at all times mentioned herein was and is an Ohio corporation with its principal place of business in Ohio. Upon information and belief, Cincinnati Insurance is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.  Plaintiffs are informed and believe, and on that basis allege, that Cincinnati Indemnity is a wholly owned subsidiary of Cincinnati Insurance (Cincinnati Insurance and Cincinnati Indemnity are collectively referred to as "Cincinnati").

7.      Plaintiffs are informed and believe, and on that basis allege, that Defendant PELEUS INSURANCE COMPANY ("Peleus") at all times mentioned herein was and is a Virginia corporation with its principal place of business in Virginia. Upon information and belief, Peleus is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

8.      Plaintiffs are informed and believe, and on that basis allege, that Defendant UNITED SPECIALTY INSURANCE COMPANY ("USIC") at all times mentioned herein was and is a Delaware corporation with its principal place of business in Texas. Upon information and belief, USIC is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA

COMPLAINT

1978.

9.      Plaintiffs are informed and believe, and on that basis allege, that Defendant

KNIGHT SPECIALTY INSURANCE COMPANY ("KSIC") at all times mentioned herein was

and is a Delaware corporation with its principal place of business in California. Upon

information and belief, KSIC is and was at all times mentioned herein eligible to do business as

an insurer in the State of New Mexico, and may be served with this Complaint by and through

the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32

NMSA 1978.

10.     Plaintiffs are informed and believe, and on that basis allege, that Defendant

NAVIGATORS SPECIALTY INSURANCE COMPANY ("Navigators") at all times mentioned

herein was and is a New York corporation with its principal place of business in New York.

Upon information and belief, Navigators is and was at all times mentioned herein eligible to do

business as an insurer in the State of New Mexico, and may be served with this Complaint by

and through the Superintendent of Insurance of the State of New Mexico pursuant to Section

59A-5-32 NMSA 1978.

11.     Plaintiffs are informed and believe, and on that basis allege, that Defendant ACE

AMERICAN INSURANCE COMPANY ("ACE") at all times mentioned herein was and is a

Pennsylvania corporation with its principal place of business in Pennsylvania. Upon information

and belief, ACE is and was at all times mentioned herein eligible to do business as an insurer in

the State of New Mexico, and may be served with this Complaint by and through the

Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA

1978.

COMPLAINT

12. Plaintiffs are informed and believe, and on that basis allege, that Defendant EVEREST PREMIER INSURANCE COMPANY ("Everest") at all times mentioned herein was and is a Delaware corporation with its principal place of business in New Jersey. Upon information and belief, Everest is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

13. Plaintiffs are informed and believe, and on that basis allege, that Defendant UNITED FIRE & CASUALTY COMPANY ("United Fire") at all times mentioned herein was and is an Iowa corporation with its principal place of business in Iowa. Upon information and belief, United Fire is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

14. Plaintiffs are informed and believe, and on that basis allege, that Defendant SELECTIVE INSURANCE COMPANY OF AMERICA ("Selective") at all times mentioned herein was and is a New Jersey corporation with its principal place of business in New Jersey. Upon information and belief, Selective is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

15. Plaintiffs are informed and believe, and on that basis allege, that Defendant

CENTRAL MUTUAL INSURANCE COMPANY ("Central Mutual") at all times mentioned

herein was and is an Ohio corporation with its principal place of business in Ohio.  Upon

information and belief, Central Mutual is and was at all times mentioned herein eligible to do

business as an insurer in the State of New Mexico, and may be served with this Complaint by

and through the Superintendent of Insurance of the State of New Mexico pursuant to Section

59A-5-32 NMSA 1978.

16.    Plaintiffs are informed and believe, and on that basis allege, that Defendant

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ("National

Union") at all times mentioned herein was and is a Pennsylvania corporation with its principal

place of business in New York. Upon information and belief, National Union is and was at all

times mentioned herein eligible to do business as an insurer in the State of New Mexico, and

may be served with this Complaint by and through the Superintendent of Insurance of the State

of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

17.    Plaintiffs are informed and believe, and on that basis allege, that Defendant

STARR INDEMNITY & LIABILITY COMPANY ("Starr Indemnity") at all times mentioned

herein was and is a Texas corporation with its principal place of business in New York. Upon

information and belief, Starr is and was at all times mentioned herein eligible to do business as

an insurer in the State of New Mexico, and may be served with this Complaint by and through

the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32

NMSA 1978.

18.    Plaintiffs are informed and believe, and on that basis allege, that Defendant

STARR SURPLUS LINES INSURANCE COMPANY ("Starr Surplus") at all times mentioned

herein was and is a Texas corporation with its principal place of business in New York. Upon information and belief, Starr Surplus is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978. Plaintiffs are informed and believe, and on that basis allege, that Starr Surplus is a wholly owned subsidiary of Starr Indemnity (Starr Surplus and Starr Indemnity are collectively referred to as "Starr").

19.    Plaintiffs are informed and believe, and on that basis allege, that Defendant ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY ("Endurance") at all times mentioned herein was and is a Delaware corporation with its principal place of business in New York.  Upon information and belief, Endurance is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

20.    Plaintiffs are informed and believe, and on that basis allege, that Defendant CLEAR BLUE SPECIALTY INSURANCE COMPANY ("Clear Blue") at all times mentioned herein was and is a Texas corporation with its principal place of business in Puerto Rico.  Upon information and belief, Clear Blue is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

21.    Plaintiffs are informed and believe, and on that basis allege, that Defendant

WESTFIELD INSURANCE COMPANY ("Westfield") at all times mentioned herein was and is an Ohio corporation with is principal place of business in Ohio. Upon information and belief, Westfield is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

22.    Plaintiffs are informed and believe, and on that basis allege, that Defendant AMERICAN FIRE & CASUALTY INSURANCE COMPANY ("American Fire") at all times mentioned herein was and is a New Hampshire corporation with its principal place of business in Massachusetts.  Upon information and belief, American Fire is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

## JURISDICTION AND VENUE

23.    This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00 per defendant, exclusive of interest and costs, and because complete diversity exists between Pulte and Defendants.

24.    Venue is proper in this Court in accordance with 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**The Montecito West Project**

25.    Pulte is a homebuilder that participated in the construction of a residential project known as Montecito West Community (the "Project"), which is located in Albuquerque, New

Mexico.

26.    Pulte performed no work on the Project; instead, subcontractors performed all of the work.

27.    Aldermill, Inc. ("Aldermill") subcontracted with Pulte to, among other things, perform the trim carpentry, painting, and drywall work on the Project.

28.    Amestoy Driwall, Inc. ("Amestoy") subcontracted with Pulte to, among other things, perform drywall work on the Project.

29.    Artisan Stucco, Inc. ("Artisan") subcontracted with Pulte to, among other things, install the stucco on the Project.

30.    Aspen Block, LLC ("Aspen Block") subcontracted with Pulte to, among other things, install the block walls and fencing at the Project.

31.    Aspen Construction, LLC ("Aspen Construction") subcontracted with Pulte to, among other things, install the concrete foundations and flatwork on the Project.

32.    Builders Mechanical, Inc. ("Builders Mechanical") subcontracted with Pulte to, among other things, install heating, ventilation and air conditioning systems on the Project.

33.    Chaparral Materials Inc. dba Gypsum Management and Supply, Inc. ("Chaparral") subcontracted with Pulte to, among other things, install drywall and windows on the Project.

34.    Connection Plumbing, LLC ("Connection Plumbing") subcontracted with Pulte to, among other things, install plumbing systems on the Project.

35.    Custom Grading, Inc. ("Custom Grading") subcontracted with Pulte to, among other things, perform rough grading on the Project.

36.     Form-Cove Manufacturing Co., Inc. ("Form-Cove") subcontracted with Pulte to, among other things, install countertops and shower enclosures on the Project.

37.     ISI Design and Installation Solutions, Inc. fka Creative Touch Interiors, Inc. dba HD Supply Interior Solutions; Interior Specialists, Inc. ("ISI") subcontracted with Pulte to, among other things, install flooring, and ceramic tile on the Project.

38.     Magnum Builders of New Mexico, Inc. ("Magnum") subcontracted with Pulte to, among other things, provide framing work and install windows on the Project.

39.     Otero & Sons Roofing Corp. ("Otero") subcontracted with Pulte to, among other things install roofing on the Project.

40.     Redline Mechanical, LLC ("Redline") subcontracted with Pulte to, among other things, install heating, ventilation and air conditioning systems on the Project.

41.     Windsor Door Sales, Inc. ("Windsor") subcontracted with Pulte to, among other things, install garage doors on the Project.

42.     Haskins Electric, LLC ("Haskins") subcontracted with Pulte to, among other things, perform electrical work on the Project.

43.     Jamar Industries, Inc. dba The Hilltop Landscape Architects and Contractors ("Hilltop") subcontracted with Pulte to, among other things, perform grading and landscaping on the Project.

**The GuideOne Policy**

44.     Aldermill performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

45.     Each subcontract required Aldermill to maintain commercial general liability

insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

46.    Aldermill obtained commercial general liability policies from GuideOne (the "GuideOne Policy"):

| Insurer | Policy Number(s) | Policy Period(s) | Named Insured | Additional Insured |
|---------|------------------|------------------|---------------|--------------------|
| GuideOne | 563000313-00 | 02/25/21 – 02/25/22 | Aldermill | Pulte |

47.    The GuideOne Policy was endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Aldermill's work or operations.

48.    The coverage afforded under the GuideOne Policy requires Defendant GuideOne to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Aldermill's work or operations.

**The Sentinel Policies**

49.    Aldermill, Artisan, and Redline performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

50.    Each subcontract required Aldermill, Artisan, and Redline to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

51.    Aldermill, Artisan, and Redline obtained commercial general liability policies from Sentinel (the "Sentinel Policies"):

| Insurer | Policy Number(s) | Policy Period(s) | Named Insured | Additional Insured |
|---------|------------------|------------------|---------------|--------------------|
| Sentinel | 34SBAIW4643<br>34SBAIJ6131 | 04/10/14 – 04/10/17<br>02/25/17 – 02/25/21 | Aldermill | Pulte |
| Sentinel | 34SBAPP4428 | 02/26/14 – 02/26/21 | Artisan | Pulte |
| Sentinel | 34SBAIW6786<br>34SBAPR8679<br>34SBAIJ0449 | 09/01/13 – 09/01/15<br>09/01/15 – 09/01/16<br>09/01/16 – 09/01/18 | Redline | Pulte |

52.    The Sentinel Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Aldermill's, Artisan's, and Redline's work or operations.

53.    The coverage afforded under the Sentinel Policies requires Defendant Sentinel to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Aldermill's, Artisan's, and Redline's work or operations.

**The Cincinnati Policies**

54.    Amestoy, Aspen Block, Aspen Construction, Connection Plumbing, Custom Grading, and Windsor performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

55.    Each subcontract required Amestoy, Aspen Block, Aspen Construction, Connection Plumbing, Custom Grading, and Windsor to maintain commercial general liability

insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

56. Amestoy, Aspen Block, Aspen Construction, Connection Plumbing, Custom Grading, and Windsor obtained commercial general liability policies from Cincinnati (the "Cincinnati Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Cincinnati | EPP0128663<br>EPP0369125 | 02/28/14 – 02/28/16<br>01/01/16 – 01/01/19 | Amestoy | Pulte |
| Cincinnati | EPP0118587 | 01/01/14 – 01/01/19 | Aspen Block | Pulte |
| Cincinnati | EPP0058469 | 11/01/13 – 11/01/18 | Aspen Construction | Pulte |
| Cincinnati | EPP0122769 | 01/23/14 – 01/23/19 | Connection Plumbing | Pulte |
| Cincinnati | EPP0129000 | 03/01/14 – 03/01/19 | Custom Grading | Pulte |
| Cincinnati | EPP0340979<br>EPP/EBA0340979 | 08/01/15 – 08/01/19<br>08/01/19 – 08/01/22 | Windsor | Pulte |

57. The Cincinnati Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Amestoy's, Aspen Block's, Aspen Construction's, Connection Plumbing's, Custom Grading's, and Windsor's work or operations.

58.     The coverage afforded under the Cincinnati Policies requires Defendant Cincinnati to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Amestoy's, Aspen Block's, Aspen Construction's, Connection Plumbing's, Custom Grading's, and Windsor's work or operations.

**The Peleus Policies**

59.     Aspen Construction performed work at the Project pursuant to one or more written subcontracts that they entered into with Pulte.

60.     Each subcontract required Aspen Construction to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

61.     Aspen Construction obtained commercial general liability policies from Peleus (the "Peleus Policies"):

| Insurer | Policy Number(s) | Policy Period(s) | Named Insured | Additional Insured |
|---------|------------------|------------------|---------------|--------------------|
| Peleus | 103GL002628100 | 11/01/18 – 11/01/19 | Aspen Construction | Pulte |

62.     The Peleus Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Aspen Construction's work or operations.

63.     The coverage afforded under the Peleus Policies requires Defendant Peleus to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to

indemnify) liability for covered property damage or bodily injury arising out of Aspen Construction's work or operations.

**The USIC Policies**

64.    Amestoy, Aspen Construction, Magnum, Otero, and Haskins performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

65.    Each subcontract required Amestoy, Aspen Construction, Magnum, Otero, and Haskins to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

66.    Amestoy, Aspen Construction, Magnum, Otero, and Haskins obtained commercial general liability policies from USIC (the "USIC Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| USIC | LIG0049300<br>ATN2027209 | 04/01/19 - 04/01/20<br>12/06/20 - 12/06/21 | Amestoy | Pulte |
| USIC | 19411450C<br>ATN2027016 | 11/01/19 – 11/01/20<br>11/01/20 – 11/01/21 | Aspen Construction | Pulte |
| USIC | USA4000686<br>ATNSF1711155<br>ATNSF1823290<br>ATN1935288 | 10/21/13 - 10/21/14<br>10/21/17 – 10/21/18<br>10/21/18 – 10/21/19<br>10/21/19 - 10/21/20 | Magnum | Pulte |

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| USIC | BVO1432536<br>BVO1543205<br>ATNATL1750057<br>ATNATL1860904<br>ATNATL1971783<br>ATN2117316 | 01/01/14 – 01/01/15<br>01/01/15 – 01/01/16<br>01/01/17 – 01/01/18<br>01/01/18 – 01/01/19<br>01/01/19 – 01/01/20<br>01/01/21 - 01/01/22 | Otero | Pulte |
| USIC | BTO1316191<br>BTO1426956<br>BTO1648383<br>ATN-SF1750764 | 07/01/13 - 01/01/14<br>07/01/14 - 07/01/15<br>07/01/16 - 07/01/17<br>07/01/17 - 07/01/18 | Haskins | Pulte |

67.     The USIC Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Amestoy's, Aspen Construction's, Magnum's, Otero's, and Haskins' work or operations.

68.     The coverage afforded under the USIC Policies requires Defendant USIC to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out Amestoy's, Aspen Construction's, Magnum's, Otero's, and Haskins' work or operations.

**The KSIC Policies**

69.     Otero and Haskins performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

70.     Each subcontract required Otero and Haskins to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

71.     Otero and Haskins obtained commercial general liability policies from KSIC (the "KSIC Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| KSIC | KSVENA160035204 | 01/01/16 – 01/01/17 | Otero | Pulte |
| KSIC | KSVENS151128002 | 04/01/15 - 07/01/16 | Haskins | Pulte |

72.     The KSIC Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Otero's and Haskins' work or operations.

73.     The coverage afforded under the KSIC Policies requires Defendant KSIC to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Otero's and Haskins' work or operations.

**The Navigators Policies**

74.     Builders Mechanical performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

75.     Each subcontract required Builders Mechanical to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to

name Pulte and its affiliates as additional insureds under those insurance policies.

76.    Builders Mechanical obtained commercial general liability policies from

Navigators (the "Navigators Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Navigators | HO15CGL132573IC <br><br> HO16CGL132573IC | 06/15/15 – 06/15/16 <br><br> 06/15/16 – 06/15/17 | Builders Mechanical | Pulte |

77.    The Navigators Policies were endorsed to cover Pulte as an "additional insured"

with respect to liability arising out of Builders Mechanical's work or operations.

78.    The coverage afforded under the Navigators Policies requires Defendant

Navigators to defend and indemnify Pulte against all claims that allege (duty to defend) and

result in (duty to indemnify) liability for covered property damage or bodily injury arising out of

Builders Mechanical's work or operations.

**The ACE Policies**

79.    Chaparral performed work at the Project pursuant to one or more written

subcontracts that it entered into with Pulte.

80.    Each subcontract required Chaparral to maintain commercial general liability

insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000

general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte

and its affiliates as additional insureds under those insurance policies.

81.    Chaparral obtained commercial general liability policies from ACE (the "ACE

Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| ACE | HDOG27405022 | 04/30/16 – 04/30/17 | Chaparral | Pulte |
|  | HDOG27865604 | 04/30/17 - 04/30/18 |  |  |
|  | HDOG46770900 | 04/30/18 - 04/30/19 |  |  |
|  | HDOG71234459 | 04/30/19 - 04/30/20 |  |  |
|  | HDOG71573217 | 04/30/20 - 04/30/21 |  |  |

82.    The ACE Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Chaparral's work or operations.

83.    The coverage afforded under the ACE Policies requires Defendant ACE to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Chaparral's work or operations.

**The Everest Policies**

84.    Chaparral performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

85.    Each subcontract required Chaparral to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

86.    Chaparral obtained commercial general liability policies from Everest (the "Everest Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Everest | RM5GL00052-211 | 04/30/21 - 04/30/23 | Chaparral | Pulte |

87.    The Everest Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Chaparral's work or operations.

88.    The coverage afforded under the Everest Policies requires Defendant Everest to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out Chaparral's work or operations.

**The United Fire Policy**

89.    Connection Plumbing performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

90.    Each subcontract required Connection Plumbing to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

91.    Connection Plumbing obtained commercial general liability policies from United Fire (the "United Fire Policy"):

/ / /

/ / /

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| United Fire | 60512801 | 01/23/19 – 01/23/20 | Connection Plumbing | Pulte |

92.    The United Fire Policy was endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Connection Plumbing's work or operations.

93.    The coverage afforded under the United Fire Policy requires Defendant United Fire to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Connection Plumbing's work or operations.

**The Selective Policies**

94.    Custom Grading and Hilltop performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

95.    Each subcontract required Custom Grading and Hilltop to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

96.    Custom Grading and Hilltop obtained a commercial general liability policy from Selective (the "Selective Policies"):

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Selective | S2304541-00 | 03/01/19 – 03/01/20 | Custom Grading | Pulte |
| Selective | S 2305603 | 08/06/19 - 08/06/24 | Hilltop | Pulte |

97.     The Selective Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Custom Grading's and Hilltop's work or operations.

98.     The coverage afforded under the Selective Policies requires Defendant Selective to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Custom Grading's and Hilltop's work or operations.

**The Central Mutual Policies**

99.     Form-Cove performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

100.    Each subcontract required Form-Cove to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

101.    Form-Cove obtained commercial general liability policies from Central Mutual (the "Central Mutual Policies"):

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Central Mutual | CLP9579802 | 04/01/14 – 04/01/20 | Form-Cove | Pulte |

102.    The Central Mutual Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Form-Cove's work or operations.

103.    The coverage afforded under the Central Mutual Policies requires Defendant Central Mutual to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Form-Cove's work or operations.

**The National Union Policies**

104.    ISI performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

105.    Each subcontract required ISI to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

106.    ISI obtained commercial general liability policies from National Union (the "National Union Policies"):

/ / /

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| National Union | GL5302603<br><br>GL2047418<br><br>GL3333254 | 08/30/13 – 08/30/14<br><br>08/30/14 – 08/30/15<br><br>08/30/15 – 08/30/16 | ISI | Pulte |

107.    The National Union Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of ISI's work or operations.

108.    The coverage afforded under the National Union Policies requires Defendant National Union to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of ISI's work or operations.

**The Starr Policies**

109.    ISI and Magnum performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

110.    Each subcontract required ISI and Magnum to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

111.    ISI and Magnum obtained commercial general liability policies from Starr (the "Starr Policies"):

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Starr | 1000025503161 | 05/15/16 – 05/15/17 | ISI | Pulte |
|  | 1000025503171 | 05/15/17 – 05/15/18 |  |  |
|  | 1000025503181 | 05/15/18 – 05/15/19 |  |  |
|  | 1000025650181 | 11/15/18 – 11/15/19 |  |  |
|  | 1000025650191 | 11/15/19 - 11/15/20 |  |  |
|  | 1000025650201 | 11/15/20 - 11/15/21 |  |  |
|  | 1000025650211 | 11/15/21 - 11/15/22 |  |  |
|  | 1000025650221 | 11/15/22 - 11/15/23 |  |  |
| Starr | SLPG-GL0292500 | 10/21/14 – 10/21/15 | Magnum | Pule |

112.     The Starr Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of ISI's and Magnum's work or operations.

113.     The coverage afforded under the Starr Policies requires Defendant Starr to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of ISI's and Magnum's work or operations.

**The Endurance Policies**

114.     Magnum performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

115.     Each subcontract required Magnum to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000

general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

116.    Magnum obtained commercial general liability policies from Endurance (the "Endurance Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Endurance | CBC20000801000<br><br>CBF10000103900 | 10/21/15 – 10/21/16<br><br>10/21/16 – 10/21/17 | Magnum | Pulte |

117.    The Endurance Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Magnum's work or operations.

118.    The coverage afforded under the Endurance Policies requires Defendant Endurance to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Magnum's work or operations.

**The Clear Blue Policy**

119.    Otero performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

120.    Each subcontract required Otero to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

121.    Otero commercial general liability policies from Clear Blue (the "Clear Blue

Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Clear Blue | AR-01-RS-2001212-00 | 01/01/20 - 01/01/21 | Otero | Pulte |

122. The Clear Blue Policy was endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Otero's work or operations.

123. The coverage afforded under the Clear Blue Policy requires Defendant Clear Blue to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Artisan Natural's and Otero's work or operations.

**The Westfield Policy**

124. Hilltop and Windsor performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

125. Each subcontract required Hilltop and Windsor to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

126. Hilltop and Windsor obtained a commercial general liability policy from Westfield (the "Westfield Policies"):

/ / /

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|-------------------|
| Westfield | TRA5349422 | 08/01/14 – 08/01/15 | Hilltop | Pulte |
| Westfield | CMM1832069 | 08/06/14 - 08/06/19 | Windsor | Pulte |

127.    The Westfield Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Hilltop's and Windsor's work or operations.

128.    The coverage afforded under the Westfield Policies requires Defendant Westfield to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Hilltop's and Windsor's work or operations.

**The American Fire Policies**

129.    Redline performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

130.    Each subcontract required Redline to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, to name Pulte and its affiliates as additional insureds under those policies.

131.    Redline obtained commercial general liability policies from American Fire (the "American Fire Policies"):

/ / /

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| American Fire | BKA58619845-18<br><br>BKA58619845-19<br><br>BKW58619845-2 | 03/01/18 – 03/01/20<br><br>03/01/20 - 03/01/21<br><br>03/01/21 - 03/01/23 | Redline | Pulte |

132.    The American Fire Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Redline's work or operations.

133.    The coverage afforded under the American Fire Policies requires Defendant American Fire to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Redline's work or operations.

**The _Anastasio_ Claims**

134.    On or around February 7, 2023, homeowners in the Montecito West Community served a notice of alleged defects, alleging property damage to their homes as a result of defective construction, including but not limited to, property damage to and arising out of construction and assembly of the building envelopes, soils, foundations, slabs, grading, walls, ceilings, floors, roofs, drywall, framing, plumbing, windows, paint, and numerous damages from building movement.

135.    On or around June 30, 2023, 24 homeowners in the Montecito West Community served a demand for arbitration with the American Arbitration Association, Case No. 01-23-0002-8751 entitled _Jennifer Anastasio, et al.  v. Pulte Home of New Mexico, Inc., et al_. ("_Anastasio_") alleging property damage to and arising out of from the construction of the

building envelopes, soils, foundations, slabs, grading, walls, ceilings, floors, roofs, drywall, framing, plumbing, windows, paint, and numerous damages from building movement.

136.    The *Anastasio* claimants seek at least $1,000,000.00 in damages from Pulte for property damage arising out of the work, operations and/or ongoing operations of the Defendant insurers' named insured contractors listed herein.

137.    As a result of the *Anastasio* Claims, Pulte has incurred and will continue to incur significant costs, including but not limited to, forensic, investigative, and repair costs, attorneys' fees, and other expenses.

138.    The *Anastasio* claimants are seeking damages from Pulte for property damage arising out of and/or resulting from the Defendants' named insured subcontractors' work on the Project.  If the homeowner-claimants in *Anastasio* are successful in obtaining an award against Pulte, Pulte will have incurred liability arising out of and/or resulting from the work of the Defendants' named-insured subcontractors.

139.    Pulte tendered its defense and indemnity of the *Anastasio* Claims to each of the Defendant insurers under the insurance policies listed herein.

140.    Each and every Defendant rejected—or otherwise failed to respond to—Pulte's tenders for defense and indemnity of the *Anastasio* Claims, leaving Pulte with substantial unreimbursed defense and costs.

141.    Pursuant to the insurance policies issued by the Defendants to their respective named-insured subcontractors, as specified herein, the Defendants owe a duty to pay all of the defense fees and costs that Pulte incurred and will continue to incur in defending against the *Anastasio* Claims.

142.     Pursuant to the insurance policies issued by the Defendants to their respective named-insured subcontractors, as specified herein, the Defendants have a duty to indemnify Pulte for any liability Pulte incurs as a result of the *Anastasio* Claims for property damage that arises out of and/or that is caused in whole or in part by the Defendants' respective named insured subcontractors' work.

143.     The Defendants breached their duties by refusing to defend Pulte.  On information and belief, Defendants misrepresented policy provisions and/or material facts related to coverage, failed to make prompt payment of Pulte's demands for reimbursement of its defense costs, and/or otherwise failed to respond to Pulte's tender of its defense of the *Anastasio* Claims. As a result of Defendants' conduct, Pulte has been and will be forced to expend significant resources defending itself against the *Anastasio* Claims. Pulte will incur fees and costs in excess of $75,000 defending against the *Anastasio* Claims, which is ongoing.

144.     Upon information and belief, the Defendants failed to investigate or timely respond to Pulte's tender of defense and indemnity, if they responded at all.

145.     Upon information and belief, the Defendants failed to consider the allegations in the pleadings, facts provided by Pulte, or facts easily discernable.

146.     Pleading further and in the alternative, in addition to these specific allegations based on insurance policy endorsements directly adding Pulte as an additional insured to each policy issued by the Defendants and listed herein, each policy listed herein above contained a provision or provisions the effect of which is to allow Pulte to stand in the shoes of the Defendants' named-insured subcontractors for purposes of coverage.

147.     The above is not an exclusive list of the Defendants' potential liability to Pulte as

other theories of potential coverage and recovery may be apparent based on the specific policies and/or specific actions of each Defendant.

## **FIRST CAUSE OF ACTION**

### **Declaratory Judgment**

(By Pulte Against All Defendants)

148.     Pulte realleges the allegations contained in paragraphs 1 through 147 inclusive, and incorporates them by reference as though fully set forth herein.

149.     Pulte is named as an additional insured or is a known third-party beneficiary of each of the insurance policies issued by the Defendants listed herein.

150.     Under N.M.S.A. (1975), § 44-6-4, "[a]ny person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." N.M.S.A. (1975), § 44-6-4.

151.     Therefore, under N.M.S.A. (1975), § 44-6-4, Pulte seeks a judicial resolution of the controversy and a declaration of the following:

> a.   Pulte is an additional insured under the Defendants' policies listed herein;

> b.   The Defendants have a duty to fully defend Pulte against the *Anastasio* Claims; and

> c.   The Defendants must indemnify Pulte for damages arising out of the work or operations of Defendants' named-insured subcontractors.

152.     A declaratory judgment is both proper and necessary so that the respective rights,

duties, and obligations of Plaintiffs and Defendants may be determined.

## SECOND CAUSE OF ACTION

### Breach of Contract – Duty to Defend

(By Pulte Against All Defendants)

153.    Pulte realleges the allegations contained in paragraphs 1 through 152, inclusive, and incorporates them by reference as though fully set forth herein.

154.    Pulte requested that Defendants defend Pulte against the *Anastasio* Claims under the insurance policies each of the Defendants issued to their respective named-insured subcontractors, as described more fully above. Pulte has performed all obligations owing under each of the policies in connection with its tender of defense, and Pulte has satisfied all relevant conditions precedent.

155.    Defendants have failed to discharge their contractual duties to defend Pulte against the *Anastasio* Claims.  More particularly, Defendants: (1) breached their contracts by failing to promptly respond to Pulte's tenders, if they responded at all; (2) breached their contracts by refusing to provide Pulte with a defense; and (3) breached their contracts by refusing to fully investigate Pulte's tender.

156.    As a direct and proximate result of Defendants' conduct as alleged in this Complaint, Pulte has been damaged and will continue to be damaged in an amount to be proven at trial.

/ / /

/ / /

/ / /

## THIRD CAUSE OF ACTION

**Breach of Contract on Direct Action as Indemnitee Under an "Insured Contract"**

(By Pulte Against All Defendants)

157.    Pulte realleges the allegations contained in paragraphs 1 through 156, inclusive, and incorporates them by reference as though fully set forth herein.

158.    Pleading further and in the alternative, Pulte has direct rights as an additional insured under the Defendants' policies listed herein.

159.    However, Pulte is also entitled to recover defense and indemnity costs in the Abeyta Claim by standing in the shoes of the Defendants' named-insured Subcontractors.

160.     Pulte is entitled to be indemnified and defended from each of the Defendants' named-insured subcontractors listed herein, pursuant to clear provisions in the contracts between Pulte and the Defendants' named-insured subcontractors.

161.    The policies issued by the Defendants provide defense and indemnity for contractual liability arising from their respective Named Insured Subcontractors' work assumed in an "insured contract".

162.    The Defendants' named-insured subcontractors' contracts with Pulte are "insured contracts" within the definitions set out in the Defendants' policies.

163.    Because Defendants' named-insured subcontractors owe defense and indemnity to Pulte under their contracts and the Defendants owe defense and indemnity to their named insured subcontractors for liability assumed in an "insured contract," under New Mexico law, Pulte can recover directly from the Defendants for their named-insured subcontractors' liability under the indemnity and defense provision of the contract. See *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 45, 139 N.M. 274 (holding that "a potential indemnitee under an insured contract, …can

reasonably claim to stand in the shoes of [the] insured.")

## FOURTH CAUSE OF ACTION

### Violation of the New Mexico Unfair Insurance Practice Act

(By Pulte Against All Defendants)

164.    Pulte realleges the allegations contained in paragraphs 1 through 163, inclusive, and incorporates them by reference as though fully set forth herein.

165.    Section 59A-16-l, et seq. NMSA, prohibits certain insurance practices.

166.    The Unfair Insurance Practices Act does not limit its availability to the named insured. See NMSA § 59A-16-30; *Hovet v. Allstate Ins. Co*., 2004-NMSC-010, ¶ 16, 135 N.M. 397.

167.    By denying coverage to Pulte as an additional insured, each of the Defendants have violated New Mexico law by, including without limitation, the following:

a.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insured's claims arising under policies;

b.    not attempting in good faith to effectuate prompt, fair, and equitable settlements of an insured's claims in which liability has become reasonably clear;

c.    misrepresenting the benefits, advantages, conditions, or terms of any policy; and

d.    failing to disclose material facts reasonably necessary to prevent other statements made from being misleading.

168.    As a result of the Insurance Defendants' actions and breaches, Pulte has suffered damages including but not necessarily limited to incurring attorneys' fees and other costs of defense in the above described matters.

/ / /

/ / /

## FIFTH CAUSE OF ACTION

### Bad Faith

(By Pulte Against All Defendants)

169.    Pulte realleges the allegations contained in paragraphs 1 through 168, inclusive, and incorporates them by reference as though fully set forth herein.

170.    Each of the Defendants owes duties to act honestly and in good faith with its insureds and to reasonably conduct a timely and fair investigation and evaluation of claims.

171.    Each of the Defendants failed to timely investigate and properly evaluate Pulte's tender of its defense and indemnity of the *Anastasio* Claims, which is unreasonable under the circumstances and constitutes bad faith breaches of their duties to act honestly and in good faith and to reasonably conduct a timely and fair investigation and evaluation of Pulte's claims.

172.    Each of the Defendants have unreasonably delayed and/or denied Pulte's request for defense and indemnity, including but not limited to failing and refusing to provide an immediate, full and complete defense to Pulte.

173.    Such conduct constitutes bad faith breaches that warrant compensatory damages.

174.    Furthermore, each of the Defendants' reasons for delay and/or denial of Pulte's claims are frivolous and unfounded.

175.    The conduct of the Defendants, except for the Participating Insurers, constitutes bad faith, malicious, willful, reckless, and wanton conduct warranting an award of punitive damages.

## PRAYER

WHEREFORE, Pulte prays for judgment against Defendants as follows:

1.    **FIRST CAUSE OF ACTION**:

    a.    For declaratory relief as described above;

    b.    For all costs and expenses at the full extent permitted by law;

    c.    For pre-judgment interest and post-judgment interest at the full extent permitted by law;

    d.    For attorneys' fees to the extent recoverable by applicable law; and

    e.    For such other and further relief as the Court deems fair and proper.

2.    **SECOND CAUSE OF ACTION**:

    a.    For general and specific damages in an amount to be proven at trial;

    b.    For punitive damages at the full extent permitted by law;

    c.    For all costs and expenses at the full extent permitted by law;

    d.    For pre-judgment interest and post-judgment interest at the full extent permitted by law;

    e.    For 18% per annum of the amount of Pulte's claim;

    f.    For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

    g.    For such other and further relief as the Court deems fair and proper.

3.    **THIRD CAUSE OF ACTION**:

    a.    For general and specific damages in an amount to be proven at trial;

    b.    For punitive damages at the full extent permitted by law;

    c.    For all costs and expenses at the full extent permitted by law;

    d.    For pre-judgment interest and post-judgment interest at the full extent permitted by law;

    e.    For 18% per annum of the amount of Pulte's claim;

    f.    For attorneys' fees to the extent recoverable by applicable law, which shall

COMPLAINT

be taxed against the Defendants as costs, and

g.   For such other and further relief as the Court deems fair and proper.

4.       **FOURTH CAUSE OF ACTION**:

a.   For general and specific damages in an amount to be proven at trial;

b.   For punitive damages at the full extent permitted by law;

c.   For all costs and expenses at the full extent permitted by law;

d.   For pre-judgment interest and post-judgment interest at the full extent permitted by law;

e.   For 18% per annum of the amount of Pulte's claim;

f.   For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

g.   For such other and further relief as the Court deems fair and proper.

5.       **FIFTH CAUSE OF ACTION**:

a.   For general and specific damages in an amount to be proven at trial;

b.   For punitive damages at the full extent permitted by law;

c.   For all costs and expenses at the full extent permitted by law;

d.   For pre-judgment interest and post-judgment interest at the full extent permitted by law;

e.   For 18% per annum of the amount of Pulte's claim;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

f.   For attorneys' fees to the extent recoverable by applicable law, which shall
be taxed against the Defendants as costs, and

g.   For such other and further relief as the Court deems fair and proper.

DATED: September 25, 2023              PAYNE & FEARS LLP


                                      */s/ Sarah J. Odia*
                                      _____
                                      Scott S. Thomas, Bar No. 21-275
                                      Sarah J. Odia, Bar No. 21-279
                                      PAYNE & FEARS LLP
                                      4 Park Plaza, Suite 1100
                                      Irvine, California 92614
                                      Phone (949) 851-1100
                                      Fax (949) 851-1212
                                      Emails: sst@paynefears.com
                                              sjo@paynefears.com

                                      Attorneys for Plaintiffs

COMPLAINT

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED: September 25, 2023                    PAYNE & FEARS LLP


                                             _____
                                             */s/ Sarah J. Odia*
                                             Scott S. Thomas, Bar No. 21-275
                                             Sarah J. Odia, Bar No. 21-279
                                             PAYNE & FEARS LLP
                                             4 Park Plaza, Suite 1100
                                             Irvine, California 92614
                                             Phone (949) 851-1100
                                             Fax (949) 851-1212
                                             Emails: sst@paynefears.com
                                                     sjo@paynefears.com

                                             Attorneys for Plaintiffs


4864-6330-9949.4

COMPLAINT